IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARK CASSIDY GOINGS,     *

 Plaintiff,        *

   v.        *    Civil Action No. DKC-24-1396

NEEKSON, *Correctional Officer*, et al., *

 Defendants.      *

          ***

**MEMORANDUM OPINION**

Plaintiff Mark Cassidy Goings filed the above-captioned civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendant Correctional Officers at the Baltimore County Detention Center ("BCDC") assaulted him causing significant injuries and he was then denied adequate medical treatment. ECF No. 1. The operative pleadings are the complaint and four supplements to the complaint. *Id.*, ECF Nos. 1, 4, 5, 18, 19. The court previously denied a motion to dismiss filed by the Defendant Correctional Officers, who have now filed both an answer and a supplemental answer. ECF Nos. 13, 14, 16, 22.

A motion to dismiss or for summary judgment was filed on behalf of Tamiru Lawgaw, PAC and Obinneamaka Iweh,[1] CRNP ("Medical Defendants"), along with a motion to seal the papers. ECF Nos. 32, 33. The court informed Mr. Goings, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that the failure to file a response in opposition to the dispositive motion could result in dismissal of the complaint. ECF No. 34. Mr. Goings filed a response opposing the dispositive motion, and moving "to amend," and for appointment of counsel. ECF No. 35. No hearing is deemed necessary as the issues have been fully briefed. *See* Local Rule 105.6 (D. Md.

---

[1] The Clerk will be directed to revise the docket to spell Defendant Obinneamaka Iwell's last name as Iweh consistent with Mr. Goings' fourth supplement to the complaint and the medical records provided. *See* ECF Nos. 19, 19-1, 32-3 at 17.

2023).  For the reasons set forth below, the Medical Defendants' dispositive motion, construed as a motion for summary judgment, will be granted.  The motion to seal will be granted in part and denied in part.  Mr. Goings' motion to amend the complaint will be denied and his motion for appointment of counsel will be granted.

## BACKGROUND

### A.    Mr. Goings' Allegations[2]

Mr. Goings alleges that on February 22, 2024, while housed at the Baltimore County Department of Corrections ("BCDC"), he was assaulted in his cell by Defendant Officer Neekson who applied his fists to Mr. Goings's face, stomach, knees, elbows, back, arms, and hands.  ECF No. 1 at 4.  After the assault, Mr. Goings refused to be handcuffed, and then Defendant Sgt. Figuroa used pepper spray and mace on him.  *Id.*  While Mr. Goings was lying on his stomach in a "defenseless position," Defendant Officer Gavigin "folded" his legs backwards towards his head. *Id.*  Mr. Goings was later taken in the direction of the elevators, and, while Plaintiff remained in handcuffs, Defendant Officer Gavigin again assaulted Mr. Goings by forcing his hands up above his head in an attempt to break both of his arms.  *Id.* at 5.  As a result of these events, Mr. Goings suffered the loss of a front tooth, a broken right pinky finger, and nerve damage to his left wrist from handcuffs that were applied too tightly.  *Id.* at 5.  Immediately following the incident, Mr. Goings was taken to the medical unit where PAC Tamira Lawgaw examined him.  ECF Nos. 19, 19-1.  The only treatment PAC Lawgaw provided was having water put on Mr. Goings's face to get the pepper spray out of his mouth and eyes.  ECF Nos. 19, 19-1.

CRNP Iweh conducted an x-ray of Mr. Goings' finger in which the results were negative. ECF Nos. 19, 19-1.  Mr. Goings thinks this was "planned" so that no one would be responsible

---

[2] Unless otherwise noted, the facts outlined here are those set forth in the complaint and the four supplements and construed in the light most favorable to Mr. Goings.  *See also* the statement of facts in the December 10, 2025, memorandum opinion.  ECF No. 13 at 1-2.

for his injuries.  ECF No. 19.  Although he requested medical attention multiple times, Mr. Goings'

broken finger was left to heal on its own and is now hanging in the wrong direction, he is still

missing a tooth, and his left wrist is in constant pain.  *Id.*, ECF No. 4 at 3, ECF No. 5 at 2-3.  Mr.

Goings seeks compensatory and punitive damages.  ECF No. 1 at 5.

### B.      Medical Defendants' Response[3]

The Medical Defendants assert that they are entitled to summary judgment in their favor

because Mr. Goings has not alleged that his injuries posed a substantial risk to his health that they

knowingly disregarded or that he had a serious medical need to which they were indifferent.  ECF

No. 32-1 at 11, 13.[4]

Medical records show that on January 17, 2022, over two years prior to the incident in

question, Mr. Goings was diagnosed with acute fractures of the fourth and fifth metacarpal heads

of the right hand with mild angulation.  ECF No. 32-3 at 2.  On January 19, 2022, Dr. Zowie

Barnes, PrimeCare's medical director, ordered splinting of Mr. Going's right hand.  *Id.* at 6.  The

next day, Mr. Goings was informed of the x-ray results.  *Id.* at 7.  On January 29, 2022, NP Stevens

offered Mr. Goings a splint for his hand and he was advised that failure to use a splint could cause

permanent deficits including chronic pain and deformity.  *Id.* at 8.  Mr. Goings refused the splint

---

[3] Although the Medical Defendants attach Mr. Goings' medical records without an affidavit, declaration, accompanying attestation, or any other certificate of authenticity, under Fed. R. Civ. P. 56, the standard is whether the records could be put in admissible form.  *See Byrd v. Ta Chen Int'l*, No. CV DKC 19-1873, 2021 WL 1890502, at *2 (D. Md. May 11, 2021) citing *Kurland v. ACE Am. Ins. Co.*, No. CV JKB-15-2668, 2017 WL 354254, at *3, n.2 (D. Md. Jan. 23, 2017). The court finds that the records could be put in admissible form, and further, as Mr. Goings has not objected to the filing, the records will be considered.

[4] The Medical Defendants also assert that, to the extent that Mr. Goings raises state law claims, these claims should be dismissed for failure to comply with the Maryland Health Care Malpractice Claims Act before filing suit, citing Maryland Claims Act.  Md. Code Ann., Cts & Jud. Proc. § 3-2A-01, *et seq*.  ECF No. 32-1 at 15-19.  Mr. Goings stated in his complaint that he is alleging a violation of his federal constitutional rights and the court does not construe his complaint as alleging violations of state law.  ECF No. 1 at 1.  This argument will not be addressed.

stating he was "fine," and will get treatment when he is released on the 11th. *Id.* Medical records also document that on June 30, 2023, Mr. Goings submitted a duplicate sick call request for treatment of a "tooth" that had broken in half causing pain and bleeding because it was sharp. *Id.* at 9.

At the time relevant to the events, PAC Lawgaw and CRNP Iweh were employed by PrimeCare Medical at the Baltimore County Detention Center. ECF No. 32-1 at 2. On February 22, 2024, Mr. Goings was brought to the medical unit for an unscheduled visit after involvement in a "Code 2" in which he was pepper sprayed. ECF No. 32-3 at 10. He was seen by PAC Lawgaw with complaints of burning eyes. *Id.* at 10, 11, 13. Mr. Goings' eyes were rinsed and he was cleared for segregation. *Id.* at 10. No other injuries were noted. *Id.* at 10, 12. On February 23, 2024, Mr. Goings was seen by Dr. Barnes on segregation rounds at staff request. *Id.* at 11. The record does not contain content other than it was a completed appointment. *Id.* On that same date, Mr. Goings refused mental health services and there is a note that Mr. Goings wants his wisdom tooth extracted and that this was to be "[r]escheduled." *Id.* at 13. On February 24, 2024, Mr. Goings put in a sick call request to be seen by an oral surgeon or dentist "ASAP" due to daily nonstop mouth bleeding and pain and, on February 28, 2024, medical staff noted this as a "[r]escheduled" task needing completion. *Id.* at 14-15. On February 28, 2024, Mr. Goings was seen again on segregation rounds and requested hemorrhoid cream. *Id.* at 15. On February 29, 2024, Mr. Goings was seen on sick call by PAC Lawgaw and Dr. Barnes and was prescribed hemorrhoid medication. *Id.*

On March 8, 2024, Mr. Goings requested a sick call complaining that his wrist and arm were "still injured/hurt since being assaulted by officer Neekson and Griffin on 02/22/24." *Id.* at 18. Mr. Goings again requested a sick call on March 9 and 10, 2024, complaining of wrist injury from the assault and that he was also losing feeling in his right foot. *Id.* at 19-20. On March 13, 2024, in response to his sick call requests, Mr. Goings was seen by CRNP Iweh. *Id.* at 17, 21. Mr.

4

Goings complained about pain in his right pinky, left wrist, and right pinky toe.  *Id.* at 17.  He stated that he "was so worried about my eyes from being maced to realize the pain."  *Id.*  CRNP Iweh observed that Mr. Goings was able to move his right pinky toe with no pain or discomfort, had slight discomfort with range of motion in his left wrist, and that his right pinky finger knuckle appeared swollen and he could not fold the finger inwards.  *Id.*  CRNP Iweh applied a splint to Mr. Goings's right pinky finger and ordered x-rays of Mr. Goings' right foot, right/left hand and wrist.  *Id.* at 17.

On March 13, 2024, Mr. Goings was seen by DDS Joe Frontera complaining of mouth bleeding and pain in his wisdom tooth.  *Id.* at 22.  The dentist found the tooth partially impacted and a plan was made to have the tooth extracted by Dr. Kalteski.  *Id.*  Dr. Frontera noted that Mr. Goings may need to see an oral surgeon upon his release.  *Id.*

On March 15, 2024, the x-rays requested by CRNP Iweh were taken.  *Id.* at 23.  The radiology report issued by Dr. Kalchman found no evidence of fracture, dislocation, swelling, or bony abnormalities in the right foot, left hand, and right wrist.  *Id.* at 23.  The report does not note that an x-ray was taken of the left wrist.  *Id.*  In the right hand, Dr. Kalchman found old distal fifth and possible fourth metacarpal fractures that were not acute.  *Id.*

On March 22, 2024, Mr. Goings was seen on segregation rounds, denied medical concerns, was ambulating well with a steady gait, and was not in acute distress.  *Id.* at 16.  On segregation rounds on April 8, 2024, Mr. Goings complained that he still had pain in his right pinky.  *Id.* at 26. Mr. Goings was seen for two sick call visits on April 11, 2024, by CRNP Thompson and then NP McIlwrath in which he complained that he still had right pinky pain and that he never received a follow up to his x-rays.  *Id.* at 28.  Mr. Goings denied any recent trauma.  *Id.*  The x-rays from March 18, 2024, were reviewed with him and he was prescribed acetaminophen.  *Id.*

On April 24, 2024, Mr. Goings submitted another sick call request seeking treatment for the injuries sustained in the assault, which he listed as his left wrist, chipped tooth, and pinky

5

finger.  *Id.* at 30.  On May 11, 2024, Mr. Goings was seen in medical by Tyronnia Brandon, Advanced Nurse Practitioner ("ANP") for follow up care regarding the pain in his pinky finger.  *Id.* at 31.  Mr. Goings reported that his finger was doing "ok" and he did not have swelling or redness.  The medical note lists "[r]elated [p]roblems as an unspecified fracture of unspecified metacarpal bone, acute fractures of the right fourth and fifth metacarpals heads with mild angulation."  *Id.*  Mr. Goings' finger splint was retaped and he confirmed that he was aware of the x-ray results and would request sick call as needed.  *Id.* at 31.   On May 24, 2024, Mr. Goings refused a medical visit for follow up care on his pinky finger.  *Id.*  He was advised to place another sick call request if needed.  *Id.*  On May 26, 2024, Mr. Goines submitted a sick call request that his hand be taped again.  *Id.* at 32.

On June 10, 2024, Mr. Goings had an annual physical examination with CRNP Bonnie.  *Id.* at 33.  No mention is made of any injures alleged to have been suffered by Mr. Goings in the assault and no extremity or musculoskeletal concerns are noted.  *Id.* at 32, 35.

On July 1, 2024, Mr. Goings had an annual dental examination with DDS Frontera.  ECF No. 32-4 at 2.  The examination records notes that tooth #8 was chipped and was sharp and cutting his lip and he was prescribed Tylenol.  *Id.*  Further, tooth #9 was chipped.  *Id.*  It was recommended that Mr. Goings restore various teeth and undergo treatment when he was released or placed in a long term facility that offered comprehensive dental treatment.  *Id.* at 2-4.

On July 10, 2024, Mr. Goings submitted a sick call request stating that his finger is fractured, he lost his splint, and his finger needs to be rewrapped.  *Id.* at 5.  Mr. Goings had another x-ray of his right hand on July 19, 2024, and the radiology report issued by Dr. Kuehn found no abnormal results.  *Id.* at 6-7.  Dr. Kuehn noted that a repeat multi-view study in one week should be considered if symptoms persist or progress.  *Id.* at 6.  On August 10, 2024, Mr. Goings submitted a sick call request requesting medication for "nerve damage" in his left wrist.  *Id.* at 8.  The record

contains a refusal to consent to treatment form dated August 14, 2024, that is witnessed, unsigned, and incomplete.  *Id.* at 9.

On November 6, 2024, Mr. Goings received a physical examination by CRNP Nwanegwo. *Id.* at 10-12.  At that time, all extremities were noted as normal and with full range of motion.  *Id.* at 12.  On November 19, 2024, Mr. Goings refused to consent to treatment consisting of an x-ray and a sick call, stating his "hand doesn't hurt at the moment."  *Id.* at 13.  On February 23, 2025, Mr. Goings was seen by RN Henderson complaining of pain in his left wrist.  *Id.* at 14.  Range of motion was noted to be full, however, he was prescribed Ibuprofen.  *Id.* at 14-15.  On February 25, 2025, an x-ray of Mr. Goings' left wrist was completed as requested by Dr. Barnes.  *Id.* at 16.  Dr. Schaffer issued the radiology report stating that the results were normal with no fracture and were stable since the last study of March 15, 2024.  *Id.* at 16.  Dr. Schaffer found the carpal bones normal in contour and alignment, the contours of the base of the metacarpals intact, the articular margins of the distal radius and ulna normal, and the overlying soft tissues normal with no fracture of the left wrist.  *Id.*  On February 28, 2025 and March 1, 2025, Mr. Goings submitted sick call requests stating that the x-ray had been taken of his left wrist but it is his left hand that is fractured, not his left wrist, he is still in pain, and needs ibuprofen prescribed.  *Id.* at 17-18.

### C.    Mr. Goings' Reply

Mr. Goings states that he had obvious injuries and significant pain after the use of force, requested medical attention, and Defendants delayed or denied medical treatment causing him unnecessary pain and prolonged injury.  *Id.* at 1.  Mr. Goings also states that he can amend any pleading deficiencies through "amendment" [of the complaint].  *Id.* at 2.

### STANDARD OF REVIEW

In reviewing the complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.

7

*Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained that a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss.  *Id.* at 555.  Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Id.* at 563.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Defendants' dispositive motion is filed in the alternative as a motion for summary judgment.  Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has clarified that this does not mean that any

8

factual dispute will defeat the motion:  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

In addition, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

The court notified Mr. Goings that the motion could be construed as a motion for summary judgment, and that if he did not file a timely and adequate response, the court could rule in the Medical Defendants' favor.  ECF No. 34.  Moreover, the motion, which identifies summary judgment as possible relief, provided sufficient notice for Mr. Goings to have a reasonable opportunity to present relevant evidence in support of his position.  *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998).  Mr. Goings opposed the motion.  ECF No. 35.  Thus, the court is satisfied that Mr. Goings has been advised that the motion could be treated as a motion for summary judgment and that he has been given a reasonable opportunity to present materials in response to the motion.  The court will resolve the motion under Rule 56.

**DISCUSSION**

### A.    Mr. Goings' Motion to Amend the Complaint

Mr. Goings filed an untitled response to Defendants' dispositive motion that also appears to be a request "to amend" [the complaint] and for appointment of counsel.  ECF No. 35.  Mr. Goings has not provided a proposed amended complaint, nor has he provided any rationale for the need to amend the complaint.  Mr. Goings has merely stated that "pleading deficiencies identified by the Court can be remedied through amendment, and amendment would not be futile."  ECF No. 35-2 at 2.  This broad statement does not provide any factual information that would allow the court to grant Mr. Goings' request to file an amended complaint and the request is denied.  *See* Fed. R. Civ. Pro. 15(a)(2).

### B.    Medical Defendants' Motion to Seal

Medical Defendants filed a motion to seal, ECF No. 33, that requests the sealing of their motion to dismiss or for summary judgment, including the memorandum of law, exhibits, and proposed order.  ECF Nos. 32, 32-1-32-4.  Mr. Goings has not responded to the motion. Defendants assert that the papers discuss Mr. Goings' medical history and the exhibits in particular include sensitive information pertaining to Mr. Goings' physical and mental health.  ECF No. 33 at 2.

Local Rule 105.11 governs the sealing of all documents filed in the record and states in relevant part that: "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection."  Local Rule 105.11 (D. Md. 2025).  The rule balances the public's general right to inspect and copy judicial records and documents, *see Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978), with competing interests that sometimes outweigh the public's right, *see In re Knight Publ'g Co.,* 743 F.2d 231, 235 (4th Cir. 1984).  The

proponent of sealing such documents must "articulate a compelling interest that outweighs the strong presumption of public access." *Doe v. Pub. Citizen,* 749 F.3d 246, 272 (4th Cir. 2014). "[S]ensitive medical or personal identification information may be sealed," although not where "the scope of [the] request is too broad." *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011).

Upon review of the records, the medical records contain sensitive confidential information pertaining to Mr. Goings and will be sealed.  The motion, memorandum of law, and proposed order do not, however, contain similar confidential information and do not go beyond the scope of the allegations presented by Mr. Goings in his complaint and supplements.  The motion to seal will be granted to the extent that the exhibits to the motion will be sealed, ECF Nos. 32-3-32-4, and will be denied as to the motion, memorandum of law, and proposed order.  ECF No. 32, 32-1, 32-2.

**C.     Analysis**

In his complaint and supplements, Mr. Goings alleges that at times relevant to this case, he was both a pretrial detainee and a convicted prisoner.  ECF No. 1 at 2.  *See also* the Maryland Judiciary Case Search at http://casesearch.courts.state.md.us/casesearch/.    The case search indicates that Mr. Goings was sentenced on November 27, 2023, and paroled on August 27, 2024. During this period of incarceration, he was a sentenced inmate.  *State v. Goings*, Case No. C-03-CR-22-004204 (Balt. Co. Cir. Ct.).  After his release, on October 24, 2024, an arrest warrant issued on new charges, and on November 6, 2024, Mr. Goings was arrested and taken into custody.  *State v. Goings*, Case No. D-08-CR-24-002316.  He entered a plea agreement on October 22, 2025, was sentenced on October 30, 2025, and released from custody on that date.  *State v. Goings*, Case No. C-03-CR-24-004535 (Balt. Co. Cir. Ct.).  During this subsequent period of incarceration, Mr. Goings was both a pretrial detainee and a sentenced inmate.

The Due Process Clause of the Fourteenth Amendment protects the rights of pretrial detainees to receive adequate medical care. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) (stating that "the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, mandates the provision of medical care" to pretrial detainees "who require it." (citation omitted)). In contrast, once convicted and serving a sentence, claims would be brought under the Eighth Amendment which prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition protects inmates from "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (citations omitted). The court will review the claims under both the Eighth and Fourteenth Amendments.

The Fourteenth Amendment "protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or that is 'excessive in relation to that purpose.'" *Short v. Hartman*, 87 F.4th 593, 608-09 (4th Cir. 2023) quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). "To state a claim of deliberate indifference to a medical need . . . a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." *Short*, 87 F.4th at 611. This means that a pretrial detainee "no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id.*

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition protects inmates from "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (citations omitted). The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and

unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."  *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).  To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, that the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or ensure it was available.  *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  Objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017) (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious

13

medical condition. *See Farmer*, 511 U.S. at 839-40. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

Mr. Goings asserts that his medical needs were not attended to by PAC Lawgaw and CRNP Iweh. Mr. Goings alleges that immediately following the February 22, 2024, incident, he was taken to the medical unit and examined by PAC Lawgaw who merely had water put on his face to get the pepper spray out of his mouth and eyes. ECF Nos. 19, 19-1. The medical record confirms that this is the only treatment provided, no other injuries were noted, and Mr. Goings was then cleared for segregation. ECF No. 32-3 at 10-13. Mr. Goings does not allege, nor do medical records indicate, that PAC Lawgaw was otherwise involved in Mr. Goings' care for injuries that occurred on February 22, 2024.

Mr. Goings alleges in his fourth supplement to the complaint that when he was taken to the medical unit on February 22, 2024, he was "clearly suffering and in distress" regarding his broken finger, missing tooth, and nerve damage to his left wrist. ECF No. 19. This statement not supported

14

by the February 22, 2024, medical records, and there is also no reference to Mr. Goings's injuries in the February 23, 2024, records, when Mr. Goings was seen by Dr. Barnes on segregation rounds and when he requested that his wisdom tooth be extracted, ECF No. 32-3 at 11; or in the February 28, 2024 records, when Mr. Goings was seen on segregation rounds and requested hemorrhoid cream, *id.* at 15, or in the February 29, 2024, records when Mr. Goings was seen on sick call by PAC Lawgaw and Dr. Barnes and was prescribed hemorrhoid medication. *Id.*  It was not until over two weeks later when, on March 8, 2024, Mr. Goings requested a sick call complaining that his wrist and arm were "still injured/hurt since being assaulted by officer Neekson and Griffin on 02/22/24."  ECF No. 32-3 at 18.  Mr. Goings then again requested sick calls on March 9 and 10, 2024, complaining of the wrist injury from the assault and that he was also losing feeling in his right foot.  *Id.* at 19-20.  Mr. Goings was seen in response to his sick call requests on March 13, 2024, by CRNP Iweh and he complained about pain in his right pinky, left wrist, and right pinky toe.  *Id.* at 17, 21.  To explain why he had not reported his injuries earlier, he stated that he "was so worried about my eyes from being maced to realize the pain."  *Id.* at 17.

Regarding his chipped tooth, Mr. Goings did not report any injuries to his mouth from the assault on February 22, 2024, when he was taken to the medical unit and seen by PAC Lawgaw, or on March 13, 2024, when he saw CRNP Iweh.  Instead, on February 23, 2024, he complained to the medical department of needing his wisdom tooth extracted and this was noted to need rescheduling, *id.* at 13; on February 24, 2024, Mr. Goings put in a sick call slip to be seen by an oral surgeon or dentist for mouth bleeding and pain, *id.* at 14; and on March 13, 2024, Mr. Goings was seen by the dentist for complaints of mouth bleeding and pain in his wisdom tooth.  *Id.* at 22. It was not until April 24, 2024, that Mr. Goings requested a sick call and listed his injuries from the assault as including a chipped tooth.  *Id.* at 30.

Mr. Goings' sole allegation regarding CRNP Iweh is that she "conducted" an x-ray of his finger in which the results were negative and this was "planned" so that no one would be

15

responsible for his injuries.  ECF Nos. 19, 19-1.  The medical records document that on March 13, 2024, CRNP Iweh observed Mr. Goings moving his right pinky toe with no pain or discomfort, he had slight discomfort with range of motion in his left wrist, and his right pinky finger knuckle appeared swollen and he could not fold the finger inwards.  ECF No. 32-3 at 17.  CRNP Iweh applied a splint to Mr. Goings' right pinky finger and requested x-rays of Mr. Goings' right foot, right/left hand and wrist.  *Id.* at 17, 21.  On March 15, 2024, x-rays were taken and interpreted by Dr. Kalchman who found no evidence of fracture, dislocation, swelling, or bony abnormalities in the right foot, left hand, and right wrist.  *Id.* at 23.  The right hand showed old distal fifth and possible fourth metacarpal fractures that were not acute.  *Id.*  Although the medical records document that CRNP Iweh ordered an x-ray of the left wrist, *id.* at 17, 21, and an x-ray of the right wrist was what was taken, *id.* at 23, there is no evidence presented that CRNP Iweh was further responsible for Mr. Goings' medical care after she examined him and ordered x-rays on March 13, 2024.

There is nothing in the record before the court to support either a Fourteenth or Eighth Amendment claim against either PAC Lawgaw or CRNP Iweh for failure to provide adequate medical care. In response to Defendants' motion and the medical records provided, Mr. Goings states only in a conclusory manner that "[f]ollowing the use of force, Plaintiff had obvious injuries and significant pain, constituting a serious medical need.  Plaintiff requested medical attention and Defendant(s) were aware of Plaintiff's condition, either through direct observation or Plaintiff's complaints."  ECF No. 35-2 at 1.  Although the court must view the evidence in the light most favorable to Mr. Goings, the record simply does not establish that there is a genuine factual dispute of a material fact that would preclude summary judgment in favor of the Medical Defendants.

The record shows that PAC Lawgaw treated the condition complained of by Mr. Goings which was limited to being pepper sprayed in his face.  There is no evidence to suggest she should have observed, been aware of, or knew of any serious risk to his health or that he had serious

16

injuries. Subsequent contacts from other medical providers following the incident similarly did not document injuries.  Further, Mr. Goings acknowledges that he did not report further injuries from the assault to the medical department for an additional two weeks. Mr. Goings was not seen by PAC Lawgaw for assessment of these later reported injuries.

CRNP Iweh examined Mr. Goings for the additionally reported injuries to his right pinky, left wrist, and right pinky toe.  She conducted a physical examination, applied a splint to the injured finger, and ordered appropriate x-rays.  There is no evidence to suggest that she had further responsibility for Mr. Goings' care and failed to treat or diagnose his injuries.

The motion filed by Defendants Lawgaw and Iweh, construed as a motion for summary judgment, will be granted and they will be dismissed from this action.

**D.      Mr. Goings' Motion for Appointment of Counsel**

The court previously denied the motion to dismiss filed by Correctional Officers Nathaniel Neekson, Nathaniel Figuroa, and Seth Gavigin holding that Mr. Goings' claim of excessive use of force may proceed.  ECF Nos. 13, 14.  Mr. Goings has now requested appointment of counsel. ECF No. 35.

"[D]istrict courts have discretion to appoint counsel in civil cases and abuse that discretion by declining to do so where the case of an indigent person presents exceptional circumstances." *Jenkins v. Woodard*, 109 F.4th 242, 247 (4th Cir. 2024) (citation and quotations omitted). Exceptional circumstances exist if (1) plaintiff has a "colorable claim" and (2) considering the claim's objective complexity and his subjective abilities, plaintiff "lacks the capacity to present it."  *Id.*  (citation and quotations omitted).

Mr. Goings has exceptional circumstances.  The excessive use of force claim will require discovery and there are unresolved issues pertaining to the injuries suffered by Mr. Goings at the hands of the defendants.  Mr. Goings should have the assistance of counsel in light of the need for discovery and legal analysis required.

## CONCLUSION

For the foregoing reasons, Mr. Goings' request to amend his complaint is denied. The Medical Defendants' motion to seal is granted, in part. The Medical Defendants' motion, construed as a motion for summary judgment will be granted and they will be dismissed from this action. Mr. Goings' motion to appoint counsel will be granted. A separate Order follows.


May 21, 2026                                              _____/s/_____
                                                         DEBORAH K. CHASANOW
                                                         United States District Judge